**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Respondent/Plaintiff,

v.                                       CV 10-314 JC/WPL
                                       CR 85-034

DANIEL CHALAN, JR.,

        Movant/Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

On June 6, 1985, Daniel Chalan, Jr. was found guilty of first degree murder, robbery, and two counts of using a firearm in the commission of a felony.  (Doc. 56, Record Proper at 188-89.)[1] Following an appeal, the district court vacated the conviction for one count of use of a firearm. (Doc. 78.)  Chalan was sentenced to life imprisonment for first degree murder, fifteen years for robbery to run concurrent to the life sentence, and five years for the remaining count of use of a firearm during the commission of a felony to run consecutive to the other terms of imprisonment. (Doc. 77.)

The matter is before me on Chalan's motion under 28 U.S.C. § 2255 to vacate his federal conviction (Doc. 88), the United States' response thereto (Doc. 92), and the supplemental briefs of both parties (Docs. 95, 99).  Chalan argues that his conviction must be set aside because expert

---

[1] All document number references are to CR 85-034.  Where the document is unavailable electronically, the citation to the Record Proper (hereinafter "RP") will also be provided.  However, the pages of Docs. 62-86 in the RP are unmarked.  As a result, citations to those documents will not provide a cross-citation to the RP.

1

testimony on comparative bullet lead analysis ("CBLA"), a scientific technique that has since been discontinued by the Federal Bureau of Investigation ("FBI"), was used against him at trial.  (Doc. 88 at 1-2.)  After a thorough review of the pleadings and the trial transcript, I find that Chalan's claim is procedurally defaulted and that he has not demonstrated prejudice.  Therefore, I recommend that the motion be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Chalan was tried by a jury before Judge Bratton in the United States District Court for the District of New Mexico.  The trial commenced on June 3, 1985 and ended on June 6, 1985.  The facts adduced at trial established that an Allsup's convenience store located within the Cochiti Pueblo in New Mexico was robbed on the evening of January 28, 1985.  *United States v. Chalan*, 812 F.2d 1302, 1304 (10th Cir. 1987).  Approximately $143, some small change, and at least two six-packs of beer were stolen from the store.  (Doc. 88 at 7; Doc. 92 at 6.)  In the course of the robbery, Elizabeth Haskins, the assistant store manager, was shot and beaten to death.  *Chalan*, 812 F.2d at 1304.  During the investigation, Chalan's name was provided to the police as one of four men seen near the store that night.  *Id.*  Local and federal law enforcement officers contacted Chalan the day after the murder and interviewed him at the Cochiti Pueblo Governor's office.  *Id.* at 1305.  Chalan denied any participation in the robbery and murder.  *Id.*

The following day, however, the police were summoned to Chalan's cousin's home.  *Id.* When the officers arrived, Chalan immediately confessed to murdering Ms. Haskins.  *Id.*  The police explained his *Miranda* rights, Chalan waived them, and then he gave a detailed confession.  *Id.* Following the confession and based on the information that Chalan provided, the police found additional physical evidence at the crime scene as well as in and near Chalan's cousin's house.  5

Record on Appeal at 202;[2] 6 RA at 13, 205; 7 RA at 74-79.  The jury deliberated for two hours and returned a verdict of guilty on all counts.  8 RA at 131-34.

Following the trial, Chalan appealed to the Tenth Circuit Court of Appeals, raising seven distinct issues.  *Chalan*, 812 F.2d at 1304.  None of those issues related to the sufficiency of the evidence against him or to the testimony concerning CBLA.  *See id.*  The Tenth Circuit rejected all but two of the claims: (1) the exclusion of Native American jurors on the panel, and (2) the imposition of consecutive sentences for two counts of using a firearm during the robbery and murder.  *Id.* at 1317.  The court remanded the case.  *Id.*  Following an evidentiary hearing, the trial court found that the Government had a legitimate, non-discriminatory reason to exclude the jurors in question and reinstated Chalan's convictions.  (Doc. 77.)  The trial court did amend the judgment as directed by the court of appeals, removing one of the two counts of use of a firearm in the commission of a felony.  (Doc. 78).  The court of appeals affirmed the trial court's decision (Doc. 82), and the United States Supreme Court declined to grant Chalan a writ of certiorari.  *Chalan v. United States*, 488 U.S. 983 (1988).

In March of 2009, the Government received a letter from the FBI that discussed the CBLA testimony presented by the Government in Chalan's trial.  One of the twenty-one prosecution witnesses at trial was Ernest Roger Peele, an FBI agent who testified as an expert in bullet lead.  6 RA at 139.  Agent Peele analyzed evidence from the crime scene to determine if there was in fact bullet lead on the evidence and testified about his results.  *Id.* at 140, 145.  He also conducted and testified about CBLA, which involves comparing the elements in shells and bullet fragments to determine whether the bullets came from the same box.  *Id.* at 140, 152-53.

---

[2] The Record on Appeal will be referred to as "RA."  The RA includes several volumes.  Volumes 5 through 8 are the transcript of the trial that took place from June 3 to 6, 1985.

The FBI ceased conducting CBLA in 2005, and the Department of Justice has been reviewing the transcripts of cases where CBLA testimony was offered.  (Doc. 88 Ex. 2 at 1, 3).[3] Chalan's case was one of these, and the reviewers concluded as follows:

> [T]he examiner properly testified that the examination revealed that the evidentiary specimen(s) probably came from the same melt of lead.  However, the reviewers felt that the examiner did not provide sufficient information to the jury to allow them to understand the number of bullets (or shot pellets) made from the melt.  Without having evidence concerning the approximate number of bullets produced from a single melt, the jury could have misunderstood the probative value of this evidence.

*Id.*  The Government provided this information to the Federal Public Defender in a letter dated April 2, 2009.  *Id.* at 1-2.  These letters are the basis for Chalan's § 2255 petition.

Chalan argues that CBLA has been entirely discredited and that, because CBLA testimony was used by the prosecution in obtaining his conviction, his conviction must be vacated.  (Doc. 88 at 15-21.)  He contends that the testimony from Agent Peele that the bullets used in the Allsup's store on January 28, 1985 likely originated from a particular box of ammunition was "the only direct, physical evidence linking Mr. Chalan to the crime . . . ."  (*Id.* at 15-16.)  While he recognizes that the case against him was not "entirely dependent" on the CBLA testimony, he states that it was "the *only* scientific evidence" linking him to the scene and that the jury gave it additional weight due to Agent Peele's credentials and expertise.  (*Id.* at 26.)

The Government does not contest that CBLA has been scientifically discredited or the

---

[3] The FBI letter to the Government states:

Science does not support the statement or inference that bullets, shot pellets, or bullet fragments can be linked to a particular box of bullets.  Further, any testimony stating bullets came from the same source of lead is potentially misleading without additional information regarding approximate numbers of other 'analytically indistinguishable' bullets that also originated from that same source.  Finally, any testimony regarding the geographical distribution of analytically indistinguishable bullets exceeds the data currently available.

(*Id.* at 3.)

suggestion that CBLA testimony may inject a trial with errors rising to a constitutional level. Instead, the Government contends that Agent Peele's testimony on CBLA was "equivocal at best" and had "very little impact on the outcome of the case." (Doc. 92 at 11, 12.) The Government argues that Chalan's confession accompanied by the corroborating physical evidence found at the scene provided more than sufficient evidence to sustain his conviction. (*Id.* at 20.)

DISCUSSION

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citation omitted). Under § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255. However, there are certain jurisdictional limitations on § 2255 petitions, including a one-year limitations period and a requirement that the prisoner raise all claims on direct appeal. *Id.*; *United States v. Frady*, 456 U.S. 152 (1982).

A.    *Timeliness*

Petitions under § 2255 that are based on newly discovered facts, as is the case here, must be filed within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Here, a letter from United States Attorney describing the FBI review of Chalan's case and the cessation of CBLA was sent to Federal Public Defender Stephen P. McCue on April 2, 2009. (Doc. 88 Ex. 2 at 1.) It is unclear when Chalan himself received a copy of the letter; the letter, however, was not mailed to Chalan by the United States Attorney's Office. (*See id.* at 2.) This petition was filed on April 5, 2010. (Doc. 88.)

5

Although neither party addresses the timeliness of this petition, whether a petition is filed within the time allowed by § 2255 is an issue the court can raise *sua sponte*. *Day v. McDonough*, 547 U.S. 198, 209 (2006). Here, the petition was filed one year and three days after the date of the letter to the Federal Public Defender. That date is the earliest that Chalan could be deemed to have received notice of the new facts. The Tenth Circuit has never stated whether FED. R. CIV. P. 6(e), allowing for three additional days for the receipt of a mailing, applies in habeas corpus proceedings. However, the Third Circuit has explicitly held that this rule does apply to habeas petitions. *Wilson v. Beard*, 426 F.3d 653, 664 (3rd Cir. 2005). The court stated that, were it otherwise, due diligence would require that "a habeas petitioner should be able to learn the contents of a letter the day it is mailed," an obviously impossible task. *Id.* No court has disagreed with the Third Circuit's holding. Therefore, I find that Chalan's petition is timely.

B.    *Procedural Bar*

Having overcome the statute of limitations, Chalan must face the consequences of failing to object to the sufficiency of the evidence or the CBLA testimony at trial or on direct appeal. In general, courts "will not consider the merits of claims that were raised neither at trial nor on direct appeal." *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004) (citing *Frady*, 456 U.S. at 166); *see also United States v. Barajas-Diaz*, 313 F.3d 1242 (10th Cir. 2002). To overcome the procedural bar set out in *Frady*, Chalan must demonstrate both "cause" excusing the default and "actual prejudice" arising from the alleged errors. *Frady*, 456 U.S. at 167-68.

I ordered both parties to submit supplemental briefing on this issue, thus affording the parties an opportunity to be heard as required by *United States v. Wiseman*, 297 F.3d 975, 980 (10th Cir. 2002) (citing *Hardiman v. Reynolds*, 971 F.2d 500, 505 (10th Cir. 1992)). (Doc. 93.) In his brief, Chalan raises two challenges to the application of the *Frady* bar to his petition. (Doc. 95.) He

contends that (1) procedural default is an affirmative defense that the Government waived, and (2) the claims are not procedurally defaulted because he has demonstrated both cause and prejudice. (*Id.*)

1.    <u>Waiver</u>

Chalan has argued that the Government waived procedural default as a defense by omitting the argument in its answer to his petition.  (Doc. 95 at 7-10.)  While Chalan recognizes that I have the authority to raise the issue *sua sponte*, he argues that the Government waived the defense and that to find otherwise would give the Government "two bites of the apple" and "create an appearance of an unfair advantage for the Government . . . ."  (*Id.* at 9.)

The Government has argued that it did not waive the defense.  It asserts that, because the Government alleged in its answer that the sufficiency of the evidence was not challenged on appeal, it preserved the defense.  (Doc. 99 at 3.)  Furthermore, the Government affirmatively raises the defense that Chalan is procedurally barred from raising his claim in its response to Chalan's supplemental brief.  (*Id.* at 3-4.)  It contends that, because there has not yet been a final decision on Chalan's § 2255 petition, the opportunity to raise the defense has not yet passed.  (*Id.* at 4.)

I find that the government did not raise the issue in its answer.  (*See* Doc. 92.)  It is, however, significant in my determination of whether to invoke the procedural bar *sua sponte* that the Government is in favor of the imposition of the procedural bar.  *Cf. Wiseman*, 297 F.3d at 979-80 (declining to impose the procedural bar where the district court decided the petition on the merits and the Government argued against its imposition on appeal).

I have the authority to raise procedural default *sua sponte*.  *Hines v. United States*, 971 F.2d 506, 508 (10th Cir. 1992).  The doctrine of procedural default in § 2255 cases serves important purposes including finality, judicial efficiency, conservation of scarce judicial resources, and orderly

7

and prompt administration of justice.  *Id.* at 509; *see also Barajas-Diaz*, 313 F.3d at 1247.  While no court is required to raise this defense *sua sponte*, it may where it "determines in its discretion that the transcendent interests served by that defense warrant it."  *Hines*, 971 F.2d at 509.

In this case, the events underlying the conviction and the original trial occurred in 1985, twenty-five years ago.  Furthermore, under 28 U.S.C. § 2255(b), an evidentiary hearing may be required to address the merits of a petition where the pleadings do not definitively show that the petitioner is entitled to no relief.[4]  *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir.1996) (citation omitted).  If Chalan were to succeed in his petition, he would be entitled to a new trial.  On these bases, I find that concerns of finality, judicial efficiency, and conservation of judicial resources are served by resolving this case on the procedural issue rather than a full merits review.

The cases cited by Chalan in support of his argument that the procedural bar should not be invoked in this case are easily distinguished.  In each of the cases out of the Tenth Circuit, the court declined to raise the bar *sua sponte* on appeal; the district court had already heard and decided the petition on its merits.  *See Wiseman*, 297 F.3d at 979-80; *Rojem v. Gibson*, 245 F.3d 1130, 1142 (10th Cir. 2001) (citing *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999)); *Mansfield v. Champion*, 992 F.2d 1098, 1099 n.2 (10th Cir. 1993).  Here, on the other hand, the procedural bar is being invoked in the first judicial opinion.  Chalan also cites an Eleventh Circuit case where the court held that the magistrate judge's invocation of procedural default *sua sponte* was an abuse of

---

[4]As the discussion will demonstrate *infra*, the petition here would likely be resolved without an evidentiary hearing.  The relevant question in a habeas petition based on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The *Frady* bar is not invoked here to avoid an evidentiary hearing or a potentially meritorious habeas petition.  Rather, it is a procedural resolution in a case where the petitioner, as this Order will show, was not disadvantaged by the introduction of evidence that may have since been discredited.  Furthermore, Chalan and the Government do not agree on the standard to assess prejudice that should apply in this case.  (*See* Doc. 95 at 5 n. 2.)  It would be less efficient to resolve that dispute than to rule on the petition based on procedural grounds.

discretion.  *Esslinger v. Davis*, 44 F.3d 1515 (11th Cir. 1995).  There, though, the magistrate judge held an evidentiary hearing on the merits.  *Id.* at 1521.  Further, he did not indicate that he would consider procedural default *sua sponte* until he recommended that the petition be dismissed as defaulted in his Report and Recommendations.  *Id.* at 1522.  The circumstances here are entirely distinct; I expressed the possibility that I would invoke the defense when I ordered the parties to brief the issue of default.  (*See* Doc. 93.)

Based on the above discussion, I find that Chalan's claim is subject to the *Frady* procedural bar.  As a result, Chalan must demonstrate cause for not raising his claims on appeal and prejudice from the alleged error.  *Frady*, 456 U.S. at 167-68.

2.    Cause and Prejudice

Chalan contends that there was both cause excusing his failure to raise his claim at trial or on appeal and actual prejudice arising from the claimed error.  (Doc. 95 at 10-12.)  He argues that cause exists where the factual or legal basis for the claim was not reasonably available at the time of his trial and appeal.  (*Id.* at 10 (citing *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991)).)  He asserts that, because the FBI had the only laboratory in the country performing CBLA, he was dependent on the Government's analysis as provided in the April 2, 2009 letter.  (*Id.* at 11.)  Chalan further states that the Government's failure to allege that the petition was untimely is evidence that the earliest date Chalan could have discovered the factual predicate for his claim was April 2, 2009. (*Id.*)  He asserts that he has demonstrated actual prejudice resulting from the admission of expert testimony on CBLA at trial because that testimony "was the only scientific evidence which linked Mr. Chalan to the crime . . . ."  (*Id.* at 12.)  He argues that prejudice exists because the conviction was based in part on false testimony and so it "hardly comports with fundamental fairness."  (*Id.* at 12 (quoting *United States v. Young*, 17 F.3d 1201, 1203-04 (9th Cir. 1994)).)

9

The Government, in turn, argues that Chalan has demonstrated neither cause nor prejudice. (Doc. 99 at 6-10.)  It first asserts that cause excusing the default does not exist because studies advising of the problems with CBLA were published years before the trial.  (*Id.* at 7.)  These preliminary studies, the Government contends, "might have been enough notification to Chalan that he could have a challenge to the CBLA testimony . . . ."  (*Id.*)  Secondly, the Government states that no prejudice arose from the CBLA testimony, arguing that the testimony "was equivocal, at best," (*id.*), and that it "had very little impact on the outcome of the trial."  (*Id.* at 8.)

Neither the Supreme Court nor the Tenth Circuit has provided a precise definition of "cause."  In fact, the Supreme Court has explicitly declined to do so.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  The Supreme Court has, however, provided some guidance.  *Murray v. Carrier*, 477 U.S. 478 (1986) (ruling on an ineffective assistance of counsel claim raised in a petition under 28 U.S.C. § 2254).  The Court stated that "some objective factor external to the defense" must have impeded the compliance with the procedural rule.  *Id.* at 488; *see also United States v. Salazar*, 323 F.3d 852 (10th Cir. 2008).  As an example, the Court noted that a showing that the factual basis for the claim was not reasonably available would constitute cause.  *Murray*, 477 U.S. at 488 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

I find that the factual basis for the claim brought in this petition was not reasonably available and so cause exists.  Chalan was informed by letter that the FBI reviewed his case because the Government presented expert testimony on CBLA at trial.  (Doc. 88 Ex. 2.)  The review committee concluded that "the jury could have misunderstood the probative value of this evidence."  (*Id.* at 3.)  If there were not cause excusing the default here, petitioners like Chalan would be left with no remedy for the potential error in their conviction.  While preliminary studies may have existed questioning the effectiveness of CBLA as a scientific technique, that is not sufficient to find that the

10

factual basis for the claim existed.  The factual basis for Chalan's claim did not arise until he received the April 2, 2009 letter.  Therefore, Chalan has demonstrated cause excusing his default.

In addition to cause, Chalan must demonstrate prejudice to overcome the procedural bar. A showing of the mere possibility of prejudice will not suffice.  *Frady*, 456 U.S. at 170.  Rather, the petitioner bears the burden of showing that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.*

In determining prejudice, the testimony by Agent Peele concerning CBLA cannot be removed from the context of the entire trial.  During the trial, the Government presented overwhelming evidence of Chalan's guilt.  The center of the prosecution's case against Chalan was his confession, given two days after the murder, in which he stated that he killed Ms. Haskins and provided a detailed account of what transpired in the store.  6 RA at 8-12; 7 RA at 74-78.  He explained much of the evidence that had already been found in the store, and, more significantly, he told the officers where they could find one of the rifles used in the robbery and murder, where they could find the change stolen from the register, and that he had shot at a lock and a drop safe that the police had not previously noticed were damaged.  7 RA at 74-78.  Following the confession, the police recovered the rifle where Chalan described that it would be.  6 RA at 13; 7 RA at 79.   They recovered a sock full of change and a key that opened the register in the Allsup's convenience store from the location given by Chalan.  6 RA at 202; 7 RA at 79, 81.  They collected the lock and drop safe and sent the items to the FBI for analysis by Agent Peele.  5 RA at 202.  Agent Peele testified that he found damage on these items and lead fragments in the damaged areas, which was consistent with being struck by a bullet.  *Id.* at 148, 150-51.

Approximately half of Agent Peele's testimony was spent discussing the lead he found in

objects from the crime scene.[5]  In the remainder of his testimony, Agent Peele described the CBLA

process and his analysis of some fragments found at and around the crime scene.  *Id.* at 152-61.  He

described CBLA as a process of segregating the bullets, shells, or fragments into categories based

on their compositional similarity.  *Id.* at 152.  If the compositions are extremely different, he would

conclude that it would be uncommon to find the bullets in the same box.  *Id.*  If they are different,

but not very different, he would conclude that they may have come from the same box, but that they

may not have.  *Id.* at 152-53.  If they are extremely close in composition, he would conclude that

they were a match and that you would commonly find them in the same box.  *Id.* at 153.

Based upon his analysis, Agent Peele was able to divide the fragments he analyzed in this

case into three groups.[6]  *Id.* at 153.  Within each group, the fragments were a match.[7]  *Id.* at 153, 160.

Between groups, the compositions had distinguishable differences, and he concluded that "whether

they came from the same box, I have no statement to make on that. Maybe they did; maybe they

didn't."  *Id.* at 160.  In discussing the match within each group, he repeatedly stated the caveat that,

though the fragments would likely come from the same box, the same box is not the only place to

find matching bullets.  *Id.* at 153, 154, 161.

Therefore, I do not agree with the Government that Agent Peele's testimony on CBLA was

entirely equivocal.  He did describe finding a match between several fragments, which connects the

---

[5] The validity of this testimony is not disputed in this petition.

[6] Apparently, fragments CS-21, CS-20, CS-11, F-1 and B-2 were in Group 1, fragments CS-21, CS-45, CS-19, CS-5, B-4, B-2 and B-1 were in Group 2, and fragment B-3 was in Group 3. 6 RA at 164-66.  All of the CS fragments were found either just outside the store or inside the store.  *Id.* at 65, 69.  All of the B fragments were found around the counter inside the store.  *Id.* at 26-28.  Based on my review of the record, the location of the F-1 fragment was not identified in testimony or on the diagram created by the defense to assist in Agent Peele's testimony.  *See id.* at 164.

[7] Much of Agent Peele's testimony about his results was documented on diagrams; as a result, it is difficult to discern from the record which fragments he analyzed and where they were found.

fragments in each group to one another.

Agent Peele's testimony, however, did not necessarily connect Chalan to the crime scene. The bullets that he analyzed were all found at and around the scene of the crime, with the exception of fragment F-1. The location of F-1 was not identified. However, no mention was made at trial that any bullet fragments were found on Chalan or in Chalan's home. Even if Agent Peele's testimony had been adamant that the bullets came from the same box, it would not dictate a finding that the admission of the testimony worked to Chalan's "actual and substantial disadvantage . . . ." *Frady*, 456 U.S. at 170. Because no fragments were found on Chalan or among his personal effects, which means that the CBLA testimony did not connect Chalan to the crime scene, Chalan's claim that Agent Peele's CBLA testimony was the only scientific evidence linking him to the scene fails.

The discussion of Agent Peele's testimony in closing arguments further evidences the minimal importance of the CBLA evidence on the trial. Agent Peele's testimony was mentioned once by the defense in closing argument, and the testimony discussed was not the CBLA evidence. 8 RA at 65. The prosecutor did not mention Agent Peele's testimony at all in his initial argument and addressed it once in rebuttal, stating that "the point of his testimony and the importance of his testimony is not so much that the bullets came from the same box but the problem that – or the situation that caused this little defect here." *Id.* at 83. Seemingly, the prosecutor was directing the jury's attention to the lock and drop safe. Thus, none of the references in closing arguments to Agent Peele's testimony had to do with CBLA. As stated by the Tenth Circuit on direct appeal, "[t]he primary evidence used against Chalan at trial was a confession made by him on the day of his arrest, January 30, 1985." *Chalan*, 812 F.2d at 1304.

While there were some inaccuracies in Chalan's confession and it did not account for all of

the evidence found at the scene,[8] the confession and the corroborating evidence provided sufficient evidence to sustain a conviction.  Additionally, the inconsistencies seemingly demonstrate only that Chalan may not have acted alone.  Because the Government was not required to prove that Chalan acted alone in the robbery and murder (*see* Doc. 1, RP at 1-2), the inconsistencies and unexplained evidence do not advance Chalan's argument that he was prejudiced by Agent Peele's CBLA testimony.

While I recognize that a witness' scientific expertise and impressive credentials can lend an aura of credibility to his testimony, *see Barefoot v. Estelle*, 463 U.S. 880, 926 n. 8 (1983) (Blackmun, J., dissenting), Agent Peele's testimony regarding CBLA had little, if any, impact on Chalan's conviction.  Chalan was convicted based on his confession and the corroborating physical evidence found both before and as a result of the confession.  While CBLA testimony was offered by the prosecution in its case in chief, the real testimony of import given by Agent Peele was his testimony that two items that Chalan admitted to shooting at did in fact have damage and lead on them, which was consistent with being struck by a bullet.  The testimony regarding CBLA did not disadvantage Chalan or contribute to his conviction.  Because Chalan has not demonstrated prejudice, he cannot overcome the procedural bar to his claim.

---

[8] At trial, the defense took care to point out the inaccuracies and unexplained evidence. 7 RA at 99, 102, 105, 109.  These include (1) Chalan's claim that he fired a rifle at an overlook before the crime when testimony demonstrated that action was taken by Hunsie Gordon, Chalan's cousin; (2) Chalan's failure to account for how the holes were made in the front windows of the Allsup's store; (3) Chalan's claim that he shot at Ms. Haskins with a slingshot when no supporting evidence for that claim was recovered; and (4) that Chalan's relatives who were with him that evening had superficial injuries.  *Id.*

## RECOMMENDATION

For the foregoing reasons, I recommend that Chalan's Motion under 28 U.S.C. § 2255 be denied. Because Chalan has not made a substantial showing of the denial of a constitutional right, I further recommend that a Certificate of Appealability not be issued. *See* 28 U.S.C. § 2253(c).

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge